UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BF PARTNERS, LLC,

       Plaintiff,

v.

ESTATE OF BERNICE MCSORLEY,
deceased, FIDELITY GUARANTEE
MORTGAGE CORPORATION,
GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION, DAN BANCROFT,
RICK FITCH and DONNA FITCH,

       Defendants.
_____/

File No.  1:03-CV-353

HON. ROBERT HOLMES BELL

GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION,

       Defendant/Counter-Plaintiff,

v.

BF PARTNERS, LLC,

       Plaintiff/Counter-Defendant,

MICHIGAN DEPARTMENT OF
TREASURY,

       Counter-Defendant.
_____/

**O P I N I O N**

In this quiet title action Plaintiff BF Partners, LLC, requests that the Court enter an order establishing title to a certain property in Plaintiff, in fee simple, free of any interests of the Defendants. Defendant Governmental National Mortgage Association ("GNMA") has responded and filed a counterclaim contending that the Supremacy Clause and the Property Clause of the United States Constitution bar the Plaintiff from taking title to the property through the tax foreclosure procedures under state law. Before the Court is GNMA's motion for summary judgment on Plaintiff's claims and the counterclaim. For the reasons stated below, the Court will grant GNMA's motion.

I.

This dispute involves a real estate parcel located at 11261 88th Avenue, West Olive, Michigan. On July 28, 1989 a previous owner of the property granted a mortgage to Defendant Fidelity Guarantee Mortgage Corporation. Docket #23, Exhibit D. Thereafter, Fidelity assigned the mortgage to GNMA. Docket #31, Exhibit #3. Subsequently, the property owner defaulted on the mortgage and GNMA acquired an ownership interest pursuant to a sheriff's deed dated November 10, 1994. Docket #42, Exhibit A. Although GNMA owned the property, they failed to pay the property taxes on the property. This failure resulted in the county initiating foreclosure proceedings on the property pursuant to state law. As a result of the foreclosure proceedings, Taxvest Ltd. received a tax deed to the property from the State Treasurer of Michigan. Docket #23, Exhibit A. Subsequently

Taxvest transferred its interest in the property to Plaintiff by quitclaim deed on May 14, 2002. Docket #23, Exhibit B. Plaintiff then brought this suit in Ottawa County Circuit Court to quiet title in the property. GNMA timely removed the action to this Court pursuant to 28 U.S.C. § 1441(a).

GNMA is a corporation wholly owned by the federal government and administered by the Secretary of Housing and Urban Development. 12 U.S.C. § 1717(2)(A). GNMA's mission is to facilitate private investment in low to moderate income housing developments. *See* 12 U.S.C. § 1716(a); *Rockford Life Ins. Co. v. Illinois Dept. of Revenue*, 482 U.S. 182, 185 (1987). GNMA's primary function is purchasing and selling Federal Housing Administration-insured mortgages. *United States v. York*, 112 F.3d 1218, 1219 (D.C. Cir. 1997); *Fox v. United States Dept. of Housing and Urban Development*, 680 F.2d 315, 318 n. 3 (3d Cir. 1982). This function has been described as similar to "arbitrage, [GNMA] enters the market, buying mortgages from primary lenders, in order to stimulate the mortgage market, and then sells the mortgages. *Fox v. Department of Housing and Urban Development*, 532 F. Supp. 540, 542 (E.D. Pa. 1982), *rev'd on other grounds*, 680 F.2d 315 (3d Cir. 1982).

12 U.S.C. § 1723a sets forth the powers of GNMA. Two provisions of the statute are relevant to this case. Under § 1723a(a), GNMA has the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction." This clause is limited, however, in that "no attachment, injunction, or other similar process, mesne or final, shall

be issued against the property of the Association or against the Association with respect to its property." 12 U.S.C. § 1723a(a). Section 1723a(c) also provides GNMA with an exemption from all federal, state, or local taxation, "except that any real property of the Association shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed." 12 U.S.C. § 1723a(c). GNMA concedes that, by operation of this provision, the property at issue in this case was subject to state taxation.

GNMA contends in this motion that the Property and Supremacy Clauses of the United States Constitution prevent foreclosure and sale of the property held by GNMA. They argue that only the federal government can determine the disposition of property owned by the United States. *See e.g.*, *Alabama v. Texas*, 347 U.S. 272, 273 (1954); *Van Brocklin v. Anderson*, 117 U.S. 151, 167 (1886). Plaintiff counters that the "sue and be sued" clause of § 1723a(a) and the exception to GNMA's exemption from taxation operate as a waiver of sovereign immunity and permit the foreclosure upon GNMA's property interest. The facts of the case are undisputed and this matter can be resolved as a matter of law.

II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). The

4

standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 301 (6th Cir. 2005).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue of material fact that must go to trial. *Anderson,* 477 U.S. at 256. An issue concerning a material fact is genuine if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Id.* at 248. To sustain this burden, a plaintiff may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375 F.3d 377, 381 (6th Cir. 2004). Rather, the party opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004).

III.

The government argues this case is governed by federal law because it involves the passage of title of real property owned by the federal government. Based upon the Property and Supremacy Clauses of the Constitution, GNMA argues that only the federal government has the authority to dispose of its property. Thus, the government asserts that the state did not have the authority to foreclose on GNMA's property and consequently, both the tax deed issued to Taxvest and the quitclaim deed granted to BF Partners are void.

The government urges the Court to adopt the reasoning of *Yunis v. United States*, 118 F. Supp.2d 1024 (C.D. Calif. 2000), in which the district court held that a state non-judicial foreclosure sale of property held by the federal government was void. In *Yunis*, the plaintiff sought to quiet title to real property he purchased at a non-judicial foreclosure. 118 F. Supp.2d at 1026. The foreclosure sale was initiated after the defendant, United States Department of Veterans Affairs ("VA"), failed to pay certain assessment fees to a homeowners association. *Id*. The VA came into possession of the subject real property when a participant in their Home Loan Guaranty Program defaulted on his mortgage loan. *Id*. at 1027. After acquiring the property, the VA failed to pay the association's assessments fees resulting in the foreclosure and sale of the property.

First, the court determined that under the Property and Supremacy Clauses of the United States Constitution, federal law governed the determination of whether land owned by the federal government had been transferred to another party. *Id*. at 1031. The court

6

traced the Supreme Court's holdings vesting the determination of the disposition of federal property in Congress under the Property Clause. *Id.* (citing *Alabama*, 347 U.S. at 273; *Armstrong v. United States*, 364 U.S. 40, 43; *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-09 (1917)). Further, based upon the Supremacy Clause, the court reasoned that congressional action pursuant to the Property Clause took precedence over state and local regulation. *Id.* Ultimately, the Court concluded "whether a title to land which had once been the property of the United States has passed . . . must be resolved by the laws of the United States . . . ." *Id.* at 1032-33 (quoting *Wilcox v. Jackson*, 38 U.S. 498, 517 (1839)).

Next the court addressed whether a uniform federal rule was required or whether the court should give deference to state law as the rule of decision. *Id.* at 1033 ("When Congress has not spoken, it is up to the 'federal courts to fill the [void] . . . according to their own standards.'") (quoting *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727 (1979). The court held that a uniform federal rule was necessary because it was doubtful that by enacting the VA home loan program, Congress intended "the outcome to depend upon varying characterizations of state law." *Id.* (quoting *United States v. Lewis County*, 175 F.3d 671, 677 (9th Cir. 1999)). The court reasoned that because of the "gravity of the federal interest" at stake and the ability of the homeowners association to bring suit to collect the debt without foreclosure under a "sue and be sued" clause in the VA-enacting statute, a uniform federal rule was necessary. *Id.* at 1034. Finally, the court concluded that the appropriate federal rule

was that only the VA may sell their property, thus the non-judicial foreclosure sale of the VA property was void and title to the property was in the VA. *Id.* at 1036.

Here, GNMA contends that the principles applied in *Yunis* should control the outcome of this case. GNMA argues that federal law should apply to this case because it involves property owned by the federal government. Further, they assert that a uniform federal rule is appropriate due to the "gravity of the federal interest" involved when the federal government is a property owner. *Id.* at 1034 (citing *Lewis County*, 175 F.3d at 677). GNMA also contends that the application of state law would interfere with their purpose of stimulating the mortgage market through the purchase and sale of mortgages.

GNMA's argument is well-taken. The property at issue in this case was owned by the federal government. GNMA gained an ownership interest in the subject property through a sheriff's deed dated November 10, 1994. Docket #42, Exhibit A. It is well-settled that where title to federal property is at stake, federal law controls when title has passed. *See e.g.*, *Alabama*, at 273 ("The power of Congress to dispose of any kind of property belonging to the United States 'is vested in Congress without limitation.'") (quoting *United States v. Midwest Oil Co.*, 236 U.S. 459, 474 (1915)); *Wilcox*, at 517. With this principle in place, it is up to the federal courts to provide the proper rule of decision, whether a uniform federal rule or by borrowing a state law. *See Yunis*, 118 F. Supp.2d at 1033 (citing *Kimbell Foods, Inc.*, 440 U.S. at 727; *United States v. Brosnan*, 363 U.S. 237 (1960); *United States v. Cless*, 254 F.2d 590 (3rd Cir. 1958)).

As in *Yunis*, because this case involves the disposition of property owned by a federal agency, a uniform federal rule is necessary. *Id.* First, the application of federal law is necessary because the disposition of federal property is a significant federal interest. *Id.* at 1034 (citing *Lewis County*, 175 F.3d at 677). Moreover, it does not seem likely that Congress would subject GNMA's property interests to the varying methods and procedures of state law. *See Id.* at 1033. Second, application of the state foreclosure proceedings to GNMA in this case would substantially impair the purpose and function of GNMA. *See Yunis*, 118 F. Supp.2d at 1035. GNMA's mission is to stimulate investment in low to moderate income housing through the purchase and sale of mortgages. *See e.g.* 12 U.S.C. § 1716(a); *Fox*, 680 F.2d at 318 n. 3. A foreclosure and sale of GNMA's property would significantly disrupt this mission by completely stripping GNMA of their interest in the property. *See also Rust v. Johnson*, 597 F.2d 174, 179 (1979) (holding that pursuant to the Supremacy Clause, a city's attempt to convey absolute title to a parcel through a paving lien was void where the Federal National Mortgage Association held an interest in the property) ("To sustain the action of the City in this case, we would run the risk of substantially impairing the Government's participation in the home mortgage market . . . . While we recognize that the City was engaging in a valid state function, this does not render its conduct constitutional or allow it to sell property without protecting the federal interest.").

Finally, although the application of federal law to this case would preclude the state from foreclosing upon GNMA's property, as GNMA has argued, there is nothing preventing

the state from filing suit against GNMA to collect the delinquent taxes based upon the "sue and be sued" clause in § 1723a(a). *Yunis*, 118 F. Supp.2d at 1034 (noting that homeowners association had the ability to sue the VA for assessment fees under a similar "sue and be sued clause" in 38 U.S.C. § 3720(a)(1)). Therefore, it is clear to the Court that federal law should control this case and that GNMA should control when and how their property is disposed of.[1] To permit a state to foreclose upon federal property, stripping the federal government of their ownership by operation of a state law procedure, absent the consent of Congress, would be in direct contravention to the Supremacy Clause. *See e.g.*, *Armstrong*, 364 U.S. at 43 (noting that property of the United States "cannot be seized by authority of another sovereignty against the consent of the Government."); *Yunis*, 118 F. Supp.2d at 1036. *See also United States v. County of Richland*, 500 F. Supp.2d 312 (D. S.C. 1980) (holding a county's levy and sale upon property owned by HUD was void under the Supremacy Clause and rejecting defendant's argument that statutory waiver permitting taxation did not subject federal property to levy and sale).

Absent an express waiver subjecting GNMA's property to the state foreclosure procedure, GNMA's interest cannot be foreclosed upon and sold. Plaintiff contends that

---

[1]Plaintiff attempts to distinguish *Yunis* because it involved a non-judicial foreclosure, as opposed to the foreclosure procedure in this case. This argument is unavailing. GNMA's interest in this case is that it not lose its property, regardless of the method used to dispossess them. *See Yunis*, 118 F. Supp.2d at 1034 ("[W]hat is critical in the context of a national federal program . . . is that the United States not lose its property irrespective of whether the sale occurs through a judicial foreclosure sale or a private non-judicial foreclosure proceeding authorized by state law.").

Congress has expressly waived GNMA's immunity from the foreclosure procedure. Whether such an express waiver exists will be addressed below.

IV.

A waiver of the federal government's sovereign immunity must be unequivocally expressed and cannot be implied. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Nordic Village Inc.*, 503 U.S. 30, 33 (1992). "Waivers of immunity must be 'construed strictly in favor of the sovereign' . . . and not 'enlarge[d] . . . beyond what the language requires.'" *United States Dept. of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-86 (1983)) (citations omitted); *United States v. Tennessee Air Pollution Control Bd.*, 185 F.3d 529, 532 (6th Cir. 1999). If a statute is ambiguous, it must be construed in favor of immunity. *United States v. Williams*, 514 U.S. 527, 531 (1995). If a statute that supposedly waives immunity has a "plausible" alternate reading, a finding of waiver must be rejected. *Nordic Village, Inc.*, 503 U.S. at 37.

Plaintiff contends that 12 U.S.C. § 1723a(a), when read in conjunction with § 1723a(c), constitutes an unequivocal waiver of GNMA's sovereign immunity and permits the state's foreclosure upon GNMA's property. Section 1723a(a) in pertinent part states that GNMA has the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal, but no attachment, injunction, or other similar process, mesne or final, shall be issued against the property of [GNMA] . . . ."[2]  Section

---

[2]"Mesne Process" refers to "a process issued between the commencement of a lawsuit and the final judgment or determination." BLACK'S LAW DICTIONARY 1222 (7th ed. 1999).

1723a(c)(1) provides that GNMA is exempt from taxation, "except that any real property of the Association shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."

Plaintiff has directed the Court to *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471 (1994). In *Meyer*, the Supreme Court determined that where a statute contains a "sue and be sued" clause, the waiver of immunity should be "'liberally construed,' notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign." 510 U.S. at 480 (citation omitted).[3] In this case, however, the "sue and be sued" clause is not unlimited, § 1723a(a) excludes "attachment, injunction, or other similar process, mesne or final." *See also Oklahoma Mortgage Co., Inc. v. Government National Mortgage Assoc.*, 831 F. Supp. 821, 823 (W.D. Okla. 1993) (noting that § 1723a(a) contains a "limited waiver" of sovereign immunity for claims against GNMA). Plaintiff contends that the tax foreclosure procedure by which the state divested GNMA is permitted under the "sue and be sued" clause and is outside of the "attachment, injunction, or other similar process" exclusion.

Plaintiff relies upon the dictionary definitions of attachment and injunction contending that each involves a specific judicial process that interferes with or disturbs property ownership. In contrast, pursuant to the state's foreclosure procedure, property is sold at a tax

---

[3]The clause at issue in *Meyer* stated "FSLIC 'shall have power . . . [t]o sue and be sued, complain and defend, in any court of competent jurisdiction in the United States.'" 510 U.S. at 480 (quoting 12 U.S.C. § 1725(c)(4) (repealed 1989)).

12

sale and upon the expiration of the redemption period, absolute title is granted to the holder of the tax deed. *See* MICH. COMP. LAWS § 211.72 (2001) (repealed 2003); *Ottaco, Inc. v. Gauze*, 226 Mich. App. 646, 652, 574 N.W.2d 393, 397 (1997) ("A tax deed issued by the state to a tax sale purchaser conveys an 'absolute title,' . . . This absolute title destroys and cuts off all previous liens and encumbrances.) (citing *Robbins v. Barron*, 32 Mich. 36, 39 (1875)). A property owner who fails to pay taxes and subsequently fails to redeem the property, is completely divested of the property and is unable to challenge the validity of the tax deed. *See* MICH. COMP. LAWS §§ 211.72; 211.143.

Plaintiff distinguishes the foreclosure procedure from "attachment" and "injunction" by arguing that the foreclosure is a passive process by which a property owner eventually loses his property by operation of law, while attachment and injunction are active processes requiring action by a court. Plaintiff contends that because the tax foreclosure is a passive process it is not excluded under the "attachment, injunction, or other similar process" exclusion in § 1723a(a) and is thus permitted under the "sue and be sued" waiver. The Court does not agree.

Plaintiff's characterization of the foreclosure procedure as a passive process proves too much. Accepting Plaintiff's view, under the foreclosure procedure, a property owner like GNMA eventually is stripped of title to the property after failing to pay taxes and failing to redeem the property. *See* MICH. COMP. LAWS §§ 211.72, 211.74, 211,143. As Plaintiff has pointed out, this procedure is simply an operation of law, at no time is a suit brought or

13

judicial process involved. As such, it is difficult to conceive how a process that does not involve a suit can fall under the waiver of immunity in a "sue and be sued" clause. Indeed including this state law process within the "sue and be sued" clause would impermissibly broaden the waiver of immunity. The outcome may be different if the state had filed suit against GNMA seeking the unpaid taxes. In that case, the waiver of immunity in the "sue and be sued" clause would arguably apply. But that is not the case here. In this case, the procedure used to divest GNMA of its property did not involve any suit, but rather, as described by the Plaintiff was a passive, non-judicial process.

Nor does the Court find that § 1723a(c)(1) waives GNMA's sovereign immunity by permitting their property to be taxed "to the same extent" as other real property. Taxing "to the same extent" could refer to any manner of plausible requirements including when the tax is due, the method of valuation, or countless other elements of the state tax procedure. *See Lewis County*, 175 F.3d at 678 (holding that Congress did not waive its immunity from foreclosure by permitting the Farm Service Agency to be taxed "in the same manner and to the same extent as other property is taxed."). It is not clear from the statutory language that Congress clearly intended to include foreclosure within the taxation clause of § 1723a(c)(1). *See also County of Richland*, 500 F. Supp. at 316 (holding that similar waiver permitting local taxation of federal property did not "allow the summary execution and sale of such property.").

14

Accordingly, the Court holds that Congress has not expressly waived GNMA's sovereign immunity from foreclosure. Such a waiver must be unequivocally expressed and cannot be implied. *Lane*, 518 U.S. at 192. Further the waiver cannot be broadened beyond the statutory language. *United States Dept. of Energy*, 503 U.S. at 616. Essentially, Plaintiff is requesting that the Court expand the "sue and be sued" language to include a passive foreclosure procedure. The waiver of sovereign immunity in § 1723a(a) cannot be expanded to include such a process. Absent an unequivocal waiver permitting foreclosure and sale of GNMA's property, the Court cannot permit such an action against GNMA. *See e.g.*, *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) ("[W]here the federal government is itself sued, 'the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived.'") (quoting *Lane*, 518 U.S. at 197). Because there are numerous plausible interpretations of this clause, a finding of waiver must be rejected. *Nordic Village, Inc.*, 503 U.S. at 37.[4]

V.

The Court notes that GNMA has conceded that they owed the property tax and have waived immunity from suit by the state to recover those monies. The Court expects that

---

[4] The Court recognizes that the State's ability to collect property taxes may be impaired by its inability to foreclose. "Such dislocations are not unknown when a taxing authority deals with another sovereign." *Lewis County*, 175 F.3d at 678 (citing *Oklahoma Tax Comm'n v. Potawatomi Tribe*, 498 U.S. 505, 514 (1991) (holding that while sovereign immunity barred a suit by a state, the state was not left without other alternative remedies)). As stated previously, while the state may not foreclose upon land owned by GNMA, they certainly can file suit against GNMA to collect the taxes owed.

15

GNMA will pay the tax liability they owe and will timely pay any other future property taxes levied upon their property.  But because Plaintiff has failed to demonstrate that Congress has waived GNMA's sovereign immunity to permit foreclosure upon GNMA's property, the Court holds that pursuant to the Property and Supremacy clauses, GNMA controls the disposition of their property.  Therefore, the tax deed and subsequent quitclaim deed are void.  Accordingly, GNMA's motion for summary judgment will be granted.  The Court will enter an order consistent with this opinion.

Date:     June 6, 2005                     /s/ Robert Holmes Bell
                                                                   ROBERT HOLMES BELL
                                                                   CHIEF UNITED STATES DISTRICT JUDGE